**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | **FOR PUBLICATION** |
| SELIM DAVID MOCHE, | Chapter 11 |
| Debtor. | Case No. 25-11831 (JPM) |

*APPEARANCES*

**PICK & ZABICKI LLP**
*Counsel for the Debtor*
369 Lexington Avenue, 12th Floor
New York, NY 10017
By:   Douglas J. Pick
      Eric Zabicki

**WEINBERG ZAREH MALKIN PRICE LLP**
*Counsel for Nancy Wolfson-Moche*
45 Rockefeller Plaza, 20th Floor
New York, NY 10111
By:   Adrienne Woods
      Terrence K. McLaughlin

**UNITED STATES TRUSTEE**
*Office of the U.S. Trustee, Region 2*
Alexander Hamilton Custom House
One Bowling Green, Room 534
New York, NY 10004
By:   Andrea Beth Schwartz

**MEMORANDUM OPINION AND ORDER GRANTING**
**<u>MOTION TO WITHDRAW AS COUNSEL</u>**

**JOHN P. MASTANDO III**
**UNITED STATES BANKRUPTCY JUDGE**

This matter arises from the Chapter 11 case of Selim David Moche (the "**Debtor**"). Before the Court is the motion (the "**Motion**"), dated March 30, 2026, of Adrienne Woods ("**Woods**"), an attorney at Weinberg Zareh Malkin Price LLP (the "**Firm**") and counsel of record for creditor Nancy Wolfson-Moche ("**Wolfson**"), seeking leave to withdraw as counsel pursuant to Local Bankruptcy Rule 2090-1(e). (Dkt. No. 66). For the reasons set forth below, the Motion is **GRANTED**.

I.      **BACKGROUND**

This Chapter 11 case arises from a matrimonial dispute between the Debtor and his estranged spouse, Wolfson, concerning their marital residence and the Debtor's alleged non-compliance with state court-ordered spousal support obligations.

As previously detailed by this Court in the Memorandum Opinion and Order dated March 9, 2026 (the "**Memorandum Opinion**") (Dkt. No. 61), the Debtor's bankruptcy filing followed years of litigation in the New York State Supreme Court (the "**State Court**") concerning the parties' divorce and equitable distribution of marital property (the "**Matrimonial Proceeding**"). In the Matrimonial Proceeding, the State Court issued multiple orders directing the Debtor to pay spousal support and carrying costs associated with the parties' residential property. (*Id.*). After finding that the Debtor had repeatedly violated those orders, the State Court held the Debtor in civil contempt. (*Id.*). Two weeks before the scheduled contempt hearing, the Debtor filed this Chapter 11 case, triggering the automatic stay and halting further actions in the Matrimonial Proceeding, including enforcement of the civil contempt order. (*Id.*). On March 9, 2026, upon Wolfson's motion, this Court granted relief from the automatic stay to permit the parties to resume

1

the Matrimonial Proceeding. (*Id*.). The Debtor filed a notice of appeal on March 23, 2026. (Dkt. No. 63).

On March 30, 2026, Woods filed the instant Motion seeking leave to withdraw as counsel. (Dkt. No. 66). Woods asserts that the attorney-client relationship has broken down due to, inter alia, Wolfson's failure to pay outstanding legal fees. (*Id*. ¶¶ 9-12). Woods also seeks the imposition of an attorney's charging lien in the amount of $61,819.90 against any distributions or proceeds recovered on account of Wolfson's claim against the Debtor's estate. (*Id*. ¶ 12). According to Woods, she has provided "robust, good-faith representation" throughout the course of this litigation and has "incurred more than $80,000 in fees and expenses," of which "less than $20,000 has been paid." (*Id*. ¶ 9). Woods represents that she offered Wolfson the "opportunity to make partial payments towards her arrears" to continue the representation but, despite "repeated notices" and requests, Wolfson failed to pay. (*Id*. ¶ 10).

On April 6, 2026, Wolfson, proceeding *pro se*, filed a response (the "**Response**") (Dkt. No. 70). Wolfson does not oppose Woods' withdrawal but contest the requested $61,819.90 attorney's charging lien, arguing that it is inflated and inaccurate. (*Id*.). The engagement letter provides a billing rate at $675 per hour for Woods and between $450 and $550 per hour for services rendered by Terrence McLaughlin ("**McLaughlin**"), another attorney at Weinberg Zareh Malkin Price LLP. (*Id*. Exhibit 1). Wolfson contends, however, that McLaughlin billed in excess of the agreed-upon rates, charging $550 per hour on the January invoice and $650 per hour on the February and March invoices. (*Id*.). Although the engagement letter states that "all billing rates are subject to reasonable periodic adjustments … following written notice," Wolfson asserts that she received no prior written notice of any rate increase. (*Id*.). She further argues that the invoices included

2

approximately "$7,097 for two motions on which [she] was not consulted" and which were "never filed." (*Id*.).

Wolfson acknowledges that she is behind on her payments but represents that she made the following payments—totaling $18,100—toward her account:

- $10,000 retainer fee, paid in two installments ($4,000 paid on August 29, 2025, and $6,000 paid on September 5, 2025);
- $2,000 paid on December 17, 2025;
- $800 paid on December 22, 2025;
- $2,800 paid on January 15, 2025; and
- $2,500 paid on February 27, 2026.

Wolfson asserts that, despite her good-faith efforts to reduce the outstanding balance, Woods informed her on March 16, 2026, that she would need to pay at least $20,000 for Woods to continue representation. (*Id*.). The following day, on March 17, 2026, Woods advised Wolfson by email that she would terminate the representation. (*Id*.). Wolfson argues that the $20,000 demand exceeded half of her annual adjusted gross income and that the Debtor owes her $61,022 in unpaid spousal support over a fourteen-month period. (*Id*.). She contends that Woods did not afford her sufficient time to cure the arrears before seeking dismissal. (*Id*.).

On April 13, 2026, Woods filed a reply (the "**Reply**"). (Dkt. No. 77). The Reply acknowledges that McLaughlin's billing rate increase was the result of a clerical error, and voluntarily reduces the amount owed by $3,360 to reflect the originally agreed-upon $550 hourly rate. (*Id*. ¶¶. 7, 12). Woods now seeks an attorney's charging lien in the amount of $58,459.90. (*Id*. ¶ 48). Woods asserts, however, that Wolfson did not raise any objections to the Firm regarding the alleged overcharge prior to filing the Response. (*Id*. ¶ 8). Woods further contends that Wolfson was afforded a reasonable opportunity to make a partial payment of $20,000, noting that the Firm "accepts payment by credit card" to accommodate Wolfson's "inability to pay at the time." (*Id*. ¶ 37). Woods also represents that the Firm continued working on Wolfson's case for approximately

3

three months without receiving payment before advising her that representation could not continue absent meaningful progress toward curing the arrears. (*Id*. ¶ 34).

The issues presently before the Court are whether Woods has demonstrated cause to withdraw as counsel under Local Bankruptcy Rule 2090-1(e), and whether the asserted $58,459.90 attorney's charging lien is warranted.

## II.    LEGAL STANDARD

Bankruptcy courts have the authority to adopt "local rules of practice and procedure." *In re Paula Saker & Co., Inc.*, 37 B.R. 802, 809 (Bankr. S.D.N.Y. 1984); *see also Sears, Roebuck & Co. v. Spivey*, 265 B.R. 357, 372 (E.D.N.Y. 2001) (citing *Somlyo v. J. Lu-Rob Enters., Inc.*, 932 F.2d 1043, 1046 (2d Cir. 1991)) (noting that "[b]ankruptcy courts have the power to enact local rules governing the practice, procedure, and conduct" of cases before them). These local rules "have the force of law to the extent they do not conflict with higher authority." *Sears*, 265 B.R. at 357; *see also Puerner v. Hudson Spine & Pain Med., P.C.*, No. 17-cv-03590 (ALC), 2019 WL 2548134, at *3 (S.D.N.Y. June 19, 2019) (recognizing that "local rules [carry] the force of law").

Local Bankruptcy Rule 2090-1(e) governs the withdrawal of counsel in this District. The rule provides that "[a]n attorney who has appeared as attorney of record may withdraw or be replaced only by order of the Court for cause shown." S.D.N.Y. Local Bankr. R. 2090-1(e). This rule is adapted from Local Civil Rule 1.4, which similarly states:

> An attorney who has appeared as attorney of record may be relieved or displaced only by order of the Court and may not withdraw from a case without leave of the Court granted by order. Such an order may be granted only upon a showing by affidavit or otherwise of satisfactory reasons for withdrawal or displacement and the posture of the case[.]

S.D.N.Y. Local Civ. R. 1.4.

"The Bankruptcy Court's local rule is an adaptation of S.D.N.Y. Local Civil Rule 1.4" and is informed by it. *Goldstein v. Albert (In re Albert)*, 277 B.R. 38, 45 (Bankr. S.D.N.Y. 2002).

4

"It is well-settled that a court has 'considerable discretion in deciding a motion for withdrawal of counsel.'" *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 657 B.R. 382, 388 (Bankr. S.D.N.Y. 2024) (quoting *Bruce Lee Enterprises, LLC v. A.V.E.L.A., Inc.*, No. 10-cv-2333 MEA, 2014 WL 1087934, at *1 (S.D.N.Y. Mar. 19, 2014)).  In exercising that discretion, courts consider "(1) the reasons for withdrawal, and (2) the impact of the withdrawal on the timing of the proceeding." *Mendez v. K&Y Peace Corp.*, No. 16-cv-05562 (SN), 2017 WL 11808872, at *1 (S.D.N.Y. Sept. 27, 2017); *Bruce Lee*, 2014 WL 1087934, at *1; *see also S.E.C. v. Pentagon Cap. Mgmt. PLC*, No. 08-cv-3324 RWS, 2013 WL 5815374, at *4 (S.D.N.Y. Oct. 29, 2013) ("[A] court may consider the 'protracted history of the litigation' when deciding whether or not to permit counsel to withdraw.") (citations omitted).

"[I]n the absence of a compelling justification, the Court will not relieve an attorney from [her] obligations." *Foster v. City of New York*, 96-cv-9271 (PKL), 2000 WL 145927, at *4 (S.D.N.Y. Feb. 7, 2000).  Satisfactory reasons for withdrawal include "a client's lack of cooperation, including lack of communication with counsel, and the existence of irreconcilable conflict between attorney and client." *Farmer v. Hyde Your Eyes Optical, Inc.*, 60 F. Supp. 3d 441, 445 (S.D.N.Y. 2014) (quoting *Naguib v. Pub. Health Solutions*, No. 12-cv-2561 (ENV) (LB), 2014 WL 2002824, at *1 (E.D.N.Y. May 15, 2014)).  "An application for withdrawal must be supported by an affidavit and a showing of satisfactory reasons 'sufficient to constitute cause for withdrawal.'" *In re WB Bridge Hotel LLC*, No. 20-23288 (SHL), 656 B.R. 733, 743 (Bankr. S.D.N.Y. Feb. 5, 2024) (quoting *Albert*, 277 B.R. at 45).

III.    **LEGAL ANALYSIS**

A.  WHETHER CAUSE EXISTS TO PERMIT WITHDRAWAL

The Court finds that Woods has demonstrated sufficient cause to withdraw under Local Bankruptcy Rule 2090-1(e).  The record reflects a substantial breakdown in the attorney-client relationship arising from Wolfson's failure to pay outstanding legal fees despite repeated notice and opportunities to cure.  "[N]on-payment of legal fees is [an] established and accepted 'good cause' for an attorney's withdrawal," particularly when accompanied by a "breakdown of trust and communication between an attorney and his or her client."  *Hall v. ArchCare*, No. 18-cv-00515 (PAC) (SN), 2021 WL 979747, at *4 (S.D.N.Y. Mar. 16, 2021) (citing *Genao v. City of New York*, No. 14-cv-08122 (AT) (JLC), 2017 WL 57886, at *2 (S.D.N.Y. Jan. 4, 2017)); *see also In re WB Bridge Hotel LLC*, 656 B.R. 733, 743 (Bankr. S.D.N.Y. 2024) (noting that "[n]onpayment of fees" can "constitute a basis for [withdrawal]").

The substantial delinquency in legal fees is supported by the parties' submissions.  Woods has submitted sworn declarations detailing more than $80,000 in fees and expenses incurred, of which less than $20,000 has been paid.  (*See* Declaration of Adrienne Woods, Dkt. No. 66, Exhibit 2).  Wolfson's own filings likewise confirm that she has paid only $18,100 towards those outstanding fees.  (Dkt. No. 70).  Wolfson's Response further reflects the deterioration in the parties' communications, acknowledging that Woods "explained that she had 35 cases and since [Wolfson's] bill was unpaid, [she] could not expect prompt response to emails or return of phone calls."  (Dkt. No. 70).  Although "non-payment of legal fees, without more, is not usually a sufficient basis to permit an attorney to withdraw," withdrawal is warranted where, as here, nonpayment is coupled with evidence of a breakdown in communication.  *In re Albert*, 277 B.R. 38, 50 (Bankr. S.D.N.Y. 2002).

6

Withdrawal is unlikely to prejudice Wolfson's rights or disrupt either this Chapter 11 case or the Matrimonial Proceeding. Although this Chapter 11 case has been contentious, Wolfson does not oppose withdrawal.[1]  (Dkt. No. 70).  The Court has already granted Wolfson relief from the automatic stay—based on a motion filed by Woods—to continue the Matrimonial Proceeding, where the only remaining issues appear to be enforcement of the State Court's contempt order against the Debtor and equitable distribution of Wolfson's marital property rights.  (*See* Memorandum Opinion, Dkt. No. 61).  Nothing in the record suggests that withdrawal will cause undue delay or otherwise impair the administration of this Chapter 11 case.  *See In re Wiener*, No. 18-13042 (JLG), 2019 WL 2575012, at \*6 (Bankr. S.D.N.Y. June 21, 2019) (finding cause to permit withdrawal where "withdrawal from this case will not adversely impact the prosecution of the Debtor's chapter 7 case").

The likely impact of withdrawal on the Court's administration of this case also weighs in favor of granting the Motion.  "In addition to determining whether there are good grounds for permitting [withdrawal]," courts also consider "the posture of the case," including whether withdrawal will "interfere[ ] with the trial court's management of its calendar."  *Weiner*, 2019 WL 2575012, at \*6 (citing *Whiting v. Lacara*, 187 F.3d 317, 321 (2d Cir. 1999)).  Here, the Memorandum Opinion is currently on appeal, and, to the extent further proceedings would implicate issues on appeal, those matters cannot proceed in this Court unless and until the District Court resolves the appeal.  *See In re Millennium Glob. Emerging Credit Master Fund Ltd.*, 471 B.R. 342, 348 (Bankr. S.D.N.Y. 2012) ("The filing of an appeal divests a bankruptcy court of jurisdiction over all aspects of the case that are the subject of the appeal."); *see also In re Winimo Realty Corp.*, 270 B.R. 99, 105 (S.D.N.Y. 2001) ("A pending appeal ... divests a bankruptcy court

---

[1]    Three days after Wolfson filed the Response *pro se*, on April 9, 2026, Alex E. Trsionis, an attorney at Rosen, Tsionis & Pizzo, PLLC, filed a notice of appearance on Wolfson's behalf.  (Dkt. No. 72).

of jurisdiction."). Permitting withdrawal at this juncture therefore will not interfere with this Court's management of its docket.

Under these circumstances, the Court concludes that Woods has established cause to withdraw under Local Bankruptcy Rule 2090-1(e).

## B. WHETHER THE ASSERTED ATTORNEY'S CHARGING LIEN IS WARRANTED

The remaining question is whether Woods' asserted attorney's charging lien in the amount of $58,459.90 is fair and reasonable.

An attorney's charging lien is governed by state law. *See Binder & Binder PC v. Barnhart*, 399 F.3d 128, 132 (2d Cir. 2005) (noting that "[a]n attorney's lien" is a "creation of state law"). In New York, Judiciary Law § 475 governs both the existence and enforcement of such liens. *See In re A. Tarricone, Inc.*, 76 B.R. 53, 56 (Bankr. S.D.N.Y. 1987); *see also Figueroa v. City of New York*, No. 05-cv-9594 (JGK), 2011 WL 3423390, at *2 (S.D.N.Y. Aug. 4, 2011) (noting that Judiciary Law § 475 "governs attorneys' charging liens in federal courts sitting in New York"). That statute provides, in relevant part:

> From the commencement of an action ... or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, judgment or final order in his client's favor, and the proceeds thereof in whatever hands they may come[.]

> N.Y. Judiciary Law § 475.

Thus, under New York Judiciary Law § 475, an attorney who appears for a party acquires a lien on the client's cause of action, claim, or counterclaim, which attaches to any favorable verdict, determination, decision, judgment, or final order, and to the proceeds thereof. *See In re Manshul Const. Corp.*, 225 B.R. 41, 49 (Bankr. S.D.N.Y. 1998) (citing N.Y. Judiciary Law § 475). Courts have consistently recognized that such liens are enforceable in federal court "in accordance with [the] interpretation by New York Courts." *Galvez v. Aspen Corp.*, 967 F. Supp. 2d 615, 624

8

(E.D.N.Y. 2013) (citing *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 449 (2d Cir. 1998)).

Where, as here, the attorney has been discharged before the client's recovery is realized, "[t]he charging lien should be fixed at the 'the fair and reasonable value of the services rendered, determined at the time of the discharge and computed on the basis of *quantum meruit*.'" *Ramgoolie v. Ramgoolie*, No. 16-cv-3345 (VEC) (SN), 2020 WL 1989292, at \*4 (S.D.N.Y. Apr. 27, 2020) (citing *Stair v. Calhoun*, 722 F. Supp. 2d 258, 268 (E.D.N.Y. 2010)).  In determining the amount of a charging lien on a *quantum meruit* basis, courts consider: "(1) the difficulty of the matter; (2) the nature and extent of the services rendered; (3) the time reasonably expended on those services; (4) the quality of performance by counsel; (5) the qualifications of counsel; (6) the amount at issue; and (7) the results obtained (to the extent known)." *Ramgoolie*, 2020 WL 1989292, at \*4 (citing *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 148 (2d Cir. 1998)); *see also Antonmarchi v. Consol. Edison Co.*, 678 F. Supp. 2d 235, 242 (S.D.N.Y. 2010).  In "assessing the fair value of services rendered," a court may also consider "the terms of the governing retainer agreement and the agreed-upon rate of compensation, although it is not bound by those terms." *Ramgoolie*, 2020 WL 1989292, at \*4 (citing *Stair*, 722 F. Supp. 2d at 269).

Applying those principles here, the Court finds that the requested charging lien in the amount of $58,459.90 reflects the fair and reasonable value of Woods' legal services.  The record reflects that Woods provided substantial and effective representation in a contentious dispute involving complex procedural and substantive matters, and Wolfson has acknowledged that Woods' representation was adequate.  (Dkt. No. 70).  Woods represents that she and the Firm incurred more than $80,000 in fees and expenses in connection with that representation, of which

9

less than $20,000 has been paid. Wolfson concedes that she paid only $18,100 toward the outstanding balance. (*Id*.).

In assessing whether hourly rates charged are "fair and reasonable," courts compare the requested rates with "the prevailing market rates of the relevant legal community," which is "the judicial district in which the trial court sits." *Loper v. New York City Police Dep't*, 853 F. Supp. 716, 719 (S.D.N.Y. 1994) (citing *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 226, 232 (2d Cir. 1987)). The benchmark community here is the Southern District of New York. *See, e.g.*, *White v. UMG Recordings, Inc.*, No. 20-cv-9971 (AT) (OTW), 2023 WL 5806194, at *4 (S.D.N.Y. Aug. 14, 2023) (finding an hourly rate of $675 for a partner and $475 for an associate reasonable); *Latin Am. Music Co., Inc. v. Spanish Broad. Sys., Inc.*, No. 13-cv-1526 (RJS), 2020 WL 2848232, at *6 (S.D.N.Y. June 1, 2020) (noting that "courts in this district have generally found hourly rates of $400 to roughly $750 to be appropriate"); *Barbour v. City of White Plains*, No. 07-cv-3014 (RPP), 2013 WL 5526234, at *10 (S.D.N.Y. Oct. 7, 2013) (finding that "a $625 per hour rate is within the range of hourly rates of civil rights attorneys in the Southern District of New York"). Here, the hourly rates reflected in the record—$675 for Woods and between $450 and $550 for McLaughlin under the engagement letter—fall well within the range that courts in this District have found reasonable. (Dkt. No. 70).

Wolfson's objections do not alter that conclusion. Although Wolfson asserts that she was charged legal fees for "motions [that were] never filed," that contention does not render the fees per se unreasonable. "Attorneys are entitled to significant discretion in determining which positions to advance on the behalf of their clients, and in determining how best to advance those positions." *675 Chelsea Corp. v. Lebensfeld*, No. 95-cv-6239 (SS), 1997 WL 576089, at *5 (S.D.N.Y. Sept. 17, 1997). Courts have routinely recognized work performed "in preparation to

10

advance the litigation" is compensable even if the motion is ultimately not filed. *See, e.g.*, *Alvarez v. Haywood*, No. 06-cv-745 (FJS) (DRH), 2011 WL 13130851, at *10 (N.D.N.Y. Aug. 29, 2011) ("Where a party's counsel expends time on motions that are not filed, courts have deemed such time compensable where, even though the motion was not filed, it was prepared in order to advance the underlying litigation."); *Hershkowitz v. ARstrat, LLC*, No. 21-cv-6093 (EK) (TAM), 2023 WL 2311429, at *5 (E.D.N.Y. Jan. 25, 2023) ("Time spent working on an unfiled motion may be compensable where, even though the motion was not filed, it was prepared in order to advance the underlying litigation.") (internal quotation omitted).

Nor does the alleged unilateral adjustment of hourly rates reduce the fair and reasonable value of Woods' services. The engagement letter expressly provides that "[a]ll billing rates are subject to reasonable periodic adjustments by the Firm, following written notice to [the client.]" (Dkt. No. 70, Exhibit 1). Although Wolfson contends that she did not receive prior written notice of any rate adjustments, that alleged notice deficiency does not render the rates unreasonable for purposes of fixing a charging lien under Judiciary Law § 475. While an engagement letter specifying the terms of retention is a relevant consideration, courts "are not bound by those terms." *Ramgoolie*, 2020 WL 1989292, at *4. New York Judiciary Law § 475 only tasks the Court with determining the fair and reasonable value of the legal services rendered, not adjudicating whether counsel have strictly followed the engagement agreement. *See Galicia v. Asrar*, 214 A.D.3d 590, 591 (1st Dep't 2023) (holding that a discharged attorney "may recover the reasonable value of his services on a *quantum meruit* basis, whether that is more or less than the amount provided for in the retainer agreement"). Regardless, the Firm has reduced the amount sought to $58,459.90 to reflect the originally agreed-upon $550 hourly rate for McLaughlin's services. (Dkt. No. 77). That

11

adjustment substantially addresses Wolfson's stated concern and further supports the fairness and reasonableness of the amount sought.

While sympathetic to Wolfson's financial circumstances, the Court is not persuaded that those circumstances warrant rejection or dilution of the requested attorney's lien. Imposition of an attorney's charging lien on Wolfson's claims does not require immediate payment. Rather, the lien secures Woods' rights to payment from any judgment, final order, or proceeds received on Wolfson's claim. *See* N.Y. Judiciary Law § 475. Wolfson's present inability to satisfy the outstanding balance therefore does not undermine the reasonableness of the lien; it merely underscores the purpose of the lien as a security for payment. *See Cox v. Scott*, 10 A.D.2d 32, 33 (1st Dep't 1960) ("The purpose of Section 475 of the Judiciary Law was to furnish security to attorneys by giving them a charging lien upon the subject of an action, special or other proceeding."); *see also K.E.C. v. C.A.C.*, 173 Misc.2d 592, 598 (Sup. Ct. Kings County, 1997) (noting that the purpose of N.Y. Judiciary Law § 475 is to permit "an attorney to assert a claim for payment of legal fees from a fund created through the attorney's effort"). Wolfson may satisfy that obligation if and when her claim against the Debtor yields recoverable proceeds through further proceedings in the Matrimonial Proceeding or in the Debtor's Chapter 11 case.

Accordingly, the Court finds that Woods' asserted attorney's charging lien in the amount of $58,459.90 is fair and reasonable.

## IV.   **CONCLUSION**

For the foregoing reasons, the Court finds that cause exists to grant Woods' withdrawal under Local Bankruptcy Rule 2090-1(e). The Court further concludes that Woods' asserted attorney's charging lien, in the amount of $58,459.90, is fair and reasonable under New York Judiciary Law § 475.

12

Accordingly, it is hereby **ORDERED** that:

1. The Motion of Withdraw as Counsel (Dkt. No. 66) is **GRANTED**.

2. Woods is granted an attorney's charging lien, pursuant to New York Judiciary Law § 475, in the amount of $58,459.90, against Wolfson's claim, cause of action, and any recovery thereon.

3. Such lien shall attach to any proceeds or distributions received by Wolfson on account of her claims in this Chapter 11 case.

**IT IS SO ORDERED**.


Dated: April 13, 2026
New York, New York

/s/ John P. Mastando III
HONORABLE JOHN P. MASTANDO III
UNITED STATES BANKRUPTCY JUDGE