**Rosen, Tsionis & Pizzo, PLLC**
38 New Street
Huntington, New York 11743
(631) 423-8527
Alex E. Tsionis, Esq.

*Attorneys for Nancy Wolfson-Moche*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

In re:                                                                     Chapter 11

      SELIM DAVID MOCHE                        Case No.: 25-11831 (JPM)
      *aka* DAVID MOCHE,

                               Debtor.
-----------------------------------------------------------X

## NANCY WOLFSON-MOCHE'S MOTION SEEKING ENTRY OF AN ORDER DISMISSING THE DEBTOR'S CHAPTER 11 CASE, OR IN THE ALTERNATIVE, CONVERTING THIS CHAPTER 11 CASE TO A CASE UNDER CHAPTER 7 OF THE BANKRUPTCY CODE

**TO:   THE HONORABLE JOHN P. MASTANDO III**
       **UNITED STATES BANKRUPTCY JUDGE**

Nancy Wolfson-Moche ("**Ms. Wolfson**"), a creditor in the above-captioned Chapter 11 case, by and through her attorneys, Rosen, Tsionis & Pizzo, PLLC, respectfully submits this motion (the "**Motion**") seeking entry of an order pursuant to Section 1112(b) of Title 11 of the United States Code dismissing the Chapter 11 case of Selim David Moche *aka* David Moche (the "**Debtor**"), or in the alternative, converting the Debtor's Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code. In support of the Motion, Ms. Wolfson respectfully submits and incorporates herein by reference her declaration (the "**Wolfson Declaration**"), attached hereto. In further support of the Motion, Mr. Wolfson respectfully states as follows:

### PRELIMINARY STATEMENT

1.     The Debtor's Chapter 11 case should be dismissed or converted for three independent reasons, any one of which alone would be sufficient to establish "cause". *First*, the

Debtor has failed to pay post-petition domestic support obligations after the bankruptcy filing in contravention of Section 1112(b)(4)(P) of the Bankruptcy Code. With the exception of two payments, the Debtor has failed to remit post-petition spousal support and child support payments to Ms. Wolfson during the approximately ten-month pendency of this Chapter 11 case.

2. *Second*, there is a substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation. Since the Debtor has filed this Chapter 11 case, the Debtor has failed to make any payments towards the Co-Op's (defined below) maintenance charges, which, upon information and belief, include the real estate taxes, eroding the Co-Op's equity each month. Additionally, the Debtor appears to admit in his *Declaration Pursuant to Local Bankruptcy Rule 1007-2* [ECF No. 3] (the "**1007 Declaration**") that he has "little to no available funds" for, among other things, the "coop maintenance and carrying costs…" *See* 1007 Decl. ¶ 4.

3. *Third*, despite failing to pay and remain current with his post-petition spousal and child support obligations, the Debtor has falsely indicated on every monthly operating report that he is current with his domestic support obligations, thereby misleading creditors, the United States Trustee, and this Court.

4. The Debtor will not be able to establish any "unusual circumstances", as that exception should not apply where a motion to dismiss or convert is based upon the continuing loss to or diminution of estate assets and the absence of a reasonable likelihood of rehabilitation, as is the case here.

5. And even if the "unusual circumstances" exception does apply, the Debtor would still not be able to establish "unusual circumstances," as the Debtor appears to admit in his 1007

Declaration that this Chapter 11 case was precipitated by the parties' divorce[1] and principally concerns spousal property rights, which is a common situation in consumer bankruptcy cases.

6.      Additionally, there is no reasonable likelihood that the Debtor will confirm a Chapter 11 plan within a reasonable period of time as the Debtor has not filed a Chapter 11 plan, the Debtor's exclusive time to do so has long since expired, and this Court has vacated the automatic stay to allow the parties to proceed with the Matrimonial Action (defined below) in state court, which could take months, if not years, to conclude.

7.      Moreover, the Debtor cannot establish a reasonable justification for his conduct, namely his repeated failure to pay post-petition domestic support obligations and the Co-Op maintenance charges, nor can the Debtor demonstrate that the acts or omissions that gave rise to "cause" can be cured within a reasonable period of time. Again, the Debtor appears to admit in his 1007 Declaration that he does not have the financial wherewithal to, among other things, remit domestic support obligations and pay the Co-Op's maintenance charges. *See* 1007 Decl. ¶ 4. Accordingly, cause exists to dismiss or convert this case.

<u>**JURISDICTION AND VENUE**</u>

8.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

9.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

10.     The statutory predicate for the relief requested herein is Section 1112(b) of the Bankruptcy Code.

---

[1] *See* 1007 Decl. ¶ 4.

**BACKGROUND**

**I.      The Debtor's Bankruptcy Filing**

11.      On August 21, 2025 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. *See* ECF No. 1.

12.      The Debtor continues to manage his property and financial affairs as a debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or committee has been appointed in this Chapter 11 case.

13.      The Debtor is represented by counsel in this Chapter 11 case.

14.      According to the Debtor's Amended Schedule A/B [ECF No. 19], the Debtor disclosed that he has an interest in the cooperative commonly known as 525 E 89th Street, Units 1K and 2K, New York, New York 10128 (the "**Co-Op**").

15.      The Debtor's bankruptcy petition, schedules, and related statements are executed by the Debtor under penalty of perjury.

16.      According to the Debtor's *Application for Authority to Retain and Employ the Corcoran Group as Debtor's Exclusive Real Estate Broker* [ECF No. 24] (the "**Broker Retention Application**"), it appears that the Debtor's exit strategy is a "sale of the Property and a division of the proceeds thereof with [Ms. Wolfson]…." *See* Brok. Ret. Appl. ¶ 5.

17.      As of the filing of this Motion, over ten (10) months after the Petition Date, the Debtor has not filed a disclosure statement or Chapter 11 plan.

**II.     The Matrimonial Proceeding**

18.      On December 9, 2021, Ms. Wolfson commenced a divorce proceeding styled *Nancy Wolfson-Moche v. S. David Moche*, in the Supreme Court of the State of New York, County

of New York (the "**Matrimonial Court**"), bearing Index Number 365568/2021 (the "**Matrimonial Proceeding**"). *See* Wolfson Decl. ¶ 4.

19. On June 1, 2023, the Matrimonial Court entered a *Decision & Order* (the "**June 2023 Order**") whereby the Matrimonial Court directed the Debtor to pay Ms. Wolfson $2,533.00 per month for spousal support and $1,703.94 per month for child support. *Id.* ¶ 5. A copy of the June 2023 Order is annexed hereto as **Exhibit "A"**.

20. Additionally, the Matrimonial Court, in its June 2023 Order, directed the Debtor to pay the mortgage with respect to the Property and to become current on any arrears. *Id.* ¶ 6. *See* June 2023 Order.

21. The Debtor failed to comply with the June 2023 Order by failing to pay Ms. Wolfson any spousal or child support since December 16, 2024, the date of the Debtor's last payment of the November 2024 amount. *Id.* ¶¶ 7, 8.

22. In addition, the Debtor failed to comply with the June 2023 Order by failing to pay the mortgage on the Co-Op. *Id.* ¶ 7.

23. As a result of the Debtor's failure to comply with the Matrimonial Court's June 2023 Order, on April 26, 2024, the Matrimonial Court entered an order (the "**April 2024 Order**") directing the Debtor to "liquidate $500,000 and bring the parties' marital homes in Connecticut and [the Co-Op in] New York City out of foreclosure, as well as pay all the outstanding maintenance, including the month of May, for [the Co-Op]" by no later than May 2, 2024." *Id.* ¶ 9. A copy of the April 2024 Order is annexed hereto as **Exhibit "B"**.

24. The Debtor failed to comply with the April 2024 Order. *Id.* ¶ 10.

25. On June 30, 2025, the Matrimonial Court entered an order finding the Debtor in willful contempt for violating the Matrimonial Court's prior orders, and directing the Debtor to,

among other things, cure all outstanding amounts, plus late fees, by July 9, 2025 (the "**June 2025 Order**"). *Id.* ¶ 11. A copy of the June 2025 Order is annexed hereto as **Exhibit "C"**.

26. The Matrimonial Court scheduled a contempt hearing for September 9, 2025. *Id.* ¶ 12.

27. However, on August 21, 2025, the Debtor filed this Chapter 11 case, which triggered the automatic stay of all actions in the Matrimonial Proceeding. *Id.* ¶ 13.

28. Except for a payment of $2,533.00 for spousal support made on February 27, 2026, and a combined payment of $4,236.94 ($2,533.00 + $1,703.94) for both spousal support and child support made on April 10, 2026, the Debtor has failed to make post-petition spousal support and child support payments required by the June 2023 Order during the approximately ten-month pendency of this Chapter 11 plan. *Id.* ¶ 14.

29. Accordingly, as of the date of this Motion, and after the Petition Date, the Debtor is delinquent in spousal support payments by no less than $20,264.00, and in child support payments by no less than $15,335.46, for a total of $35,599.46. *Id.* ¶¶ 14-17.

30. Additionally, upon information and belief, as of the Petition Date, the Debtor has not made any payments toward the mortgage. *Id.* ¶ 18. In fact, on December 3, 2025, Ridgewood Savings Bank, the lender that holds a security interest in the Debtor's and Ms. Wolfson's 575 shares of stock in the Co-Op, filed a motion for relief from stay [ECF No. 40] with respect to the Co-Op, alleging, among other things, that the mortgage is contractually due for the December 16, 2024 payment. *Id.* ¶ 19. Upon information and belief, the Debtor has not made any payments towards the mortgage during the pendency of his Chapter 11 case. *Id.*

31. Worse, as of the Petition Date, upon information and belief, the Debtor has not made any payments towards the Co-Op maintenance charges. *Id.* ¶ 20. Annexed hereto as **Exhibit**

**"D"** are two invoices from the cooperative association evidencing the amount owed as of May 22, 2026, of $74,898.16 for Unit 1K and $72,347.11 for Unit 2K.

32. On March 9, 2026, this Court entered a *Memorandum Opinion and Order Denying Motion to Retain Real Estate Broker; Granting Stay Relief to Resume Matrimonial Proceeding; and Denying Stay Relief to Proceed with Foreclosure* [ECF No. 61] (the "**Memorandum Opinion**"), which, among other things, vacated the automatic stay with respect to the Matrimonial Proceeding.

## III. The Debtor's Monthly Operating Reports

33. Part 8 of the monthly operating report requires an individual debtor to disclose whether they are required to pay domestic support obligations. *See* Monthly Operating Report UST Form 11-MOR (12/01/2021).

34. In addition, if a debtor has checked the box that requires them to pay domestic support obligations, Part 8 of the monthly operating report then requires a debtor to disclose whether the debtor has "made all Domestic Support Obligation payments." *Id.*

35. The Debtor has filed monthly operating reports in his Chapter 11 case [ECF Nos. 45-47, 50, 57, 62, 79, 83, and 84] (collectively, the "**MORs**" and each individually an "**MOR**").

36. In every MOR the Debtor has filed, the Debtor checked the box indicating that he is required to pay domestic support obligations. *See* MORs.

37. Additionally, in every MOR the Debtor has filed, the Debtor has checked the box that he has "made all Domestic Support Obligation payments." *Id*.

38. However, except for a payment of $2,533.00 made on February 27, 2026, and a payment of $4,236.94 made on April 10, 2026, the Debtor has failed to make spousal and child

support payments to Ms. Woflson and *has not* "made all Domestic Support Obligation payments."

*See* Wolfson Decl. ¶ 25.

39.     The Debtor executed his MORs under the penalty of perjury.

## RELIEF REQUESTED

40.     By this Motion, Ms. Wolfson seeks entry of an order, substantially in the form of the proposed order annexed hereto, dismissing the Debtor's Chapter 11 case, or in the alternative, converting the Debtor's Chapter 11 case to one under Chapter 7 of the Bankruptcy Code.

## LEGAL STANDARD

41.     Under Section 1112(b) of the Bankruptcy Code, a court can dismiss a Chapter 11 case or convert it to a case under Chapter 7 "for cause" so long as it is in the best interests of both the creditors and the estate. 11 U.S.C. § 1112(b). Subsection (b)(4) of Section 1112(b) contains sixteen examples of events that may constitute "cause" for dismissal or conversion of a Chapter 11 case. 11 U.S.C. § 1112(b)(4). And critically, the list contained in Subsection (b)(4) is "not exhaustive" and courts are free to consider other factors. *See, e.g., In re Ameribuild Constr. Mgmt. Inc.*, 399 B.R. 129, 131 n. 3 (Bankr. S.D.N.Y. 2009).

42.     The moving party has the burden of demonstrating cause for dismissal. *In re Loco Realty Corp.*, No. 09-11785 (AJG), 2009 Bankr. LEXIS 1724, at *5 (Bankr. S.D.N.Y. June 25, 2009). Once "cause" has been established, a court must then examine whether dismissal or conversion of a case to a case under Chapter 7 is in the best interests of the creditors and the estate. *In re Elmwood Ventures LLC*, No. 25-10932 (MG), 2025 LX 335728, at *5 (Bankr. S.D.N.Y. Sep. 10, 2025).

43.     Absent "unusual circumstances" specifically identified by the court, the court must dismiss or convert a case under Bankruptcy Code Section 1112(b) if cause is established, unless

the debtor or other party in interest is able to show that there exists a reasonable justification for the act or omission and that it will be cured within a reasonable period of time. *See* 11 U.S.C. § 1112(b)(2). "Once the movant has established cause, the burden shifts to the respondent to demonstrate by evidence the unusual circumstances that establish that dismissal or conversion is not in the best interests of creditors and the estate." *In re Strawbridge*, No. 09-17208-MG, 2010 Bankr. LEXIS 544, at *10 (Bankr. S.D.N.Y. Mar. 5, 2010).

44. In the instant case, there are at least three grounds to dismiss or convert the Debtor's Chapter 11 case:

1. Failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition. *See* 11 U.S.C. § 1112(b)(4)(P).

2. Substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation. *See* 11 U.S.C. § 1112(b)(4)(A).

3. The Debtor's filing of misleading monthly operating reports.

**DISCUSSION**

**I.       Failure of the Debtor to Pay Post-Petition Domestic Support Obligations**

45. Cause exists to dismiss or convert the Debtor's Chapter 11 case based upon the Debtor's repeated failure to pay post-petition domestic support obligations in violation of Section 1112(b)(4)(P) of the Bankruptcy Code.

46. Section 1112(b)(4)(P) specifically establishes that cause to dismiss or convert a Chapter 11 case includes "failure of the debtor to pay **any** domestic support obligation that first becomes payable after the date of the filing of the petition." 11 U.S.C. §1112(b)(4)(P) (emphasis added). If a debtor fails to pay any post-petition domestic support obligation, that fact would constitute cause to convert a Chapter 11 case. *See In re Paris*, No. 23 B 16481, 2024 Bankr. LEXIS 1448, at *9 (Bankr. N.D. Ill. June 17, 2024). In addition, Section 1112(b)(4)(P) "does not have a

threshold amount; any default in the payment of post-petition domestic support obligations constitutes cause to convert or dismiss the case." *In re Hao*, 644 B.R. 339, 347 (Bankr. E.D. Va. 2022).

47.     Pursuant to the June 2023 Order of the Matrimonial Court, the Debtor was directed to pay Ms. Wolfson monthly spousal support in the amount of $2,533.00 and monthly child support in the amount of $1,703.94. These obligations constitute domestic support obligations within the meaning of Section 101(14A) of the Bankruptcy Code. However, here, during the pendency of this Chapter 11 case, the Debtor has failed to remain current on those obligations. Indeed, with the exception of a payment of $2,533.00 made on February 27, 2026, and a combined payment of $4,236.94 made on April 10, 2026, the Debtor has failed to make the ordered spousal support and child support payments required by the June 2023 Order and is delinquent in nearly $36,000.00 cumulatively over more than ten (10) months post-petition. Accordingly, because the Debtor has failed to pay domestic support obligations that became due after the Petition Date, cause exists under Section 1112(b)(4)(P) to dismiss or convert this Chapter 11 case on this ground alone.

## II.     <u>Continuing Loss and Absence of Rehabilitation</u>

48.     Cause also exists to dismiss or convert the Debtor's Chapter 11 case under Section 1112(b)(4)(A), which provides that "cause" includes "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4)(A).

49.     To establish cause under § 1112(b)(4)(A), the movant must satisfy both prongs of the statute: (i) substantial or continuing loss to or diminution of the estate; and (ii) the absence of a reasonable likelihood of rehabilitation. *See* 11 U.S.C. § 1112(b)(4)(A); s*ee also FRGR Managing Member LLC*, 419 B.R. at 581; *see also In re AdBrite Corp.*, 290 B.R. 209, 215 (Bankr. S.D.N.Y.

2003). In determining whether there is a substantial or continuing loss to, or diminution of, the estate, "a court must make a full evaluation of the present condition of the estate, not merely look at the debtor's financial statements." *AdBrite Corp.*, 290 B.R. at 215.

50.     The existence of a continuing loss to or diminution of the estate can be established by an "actual depreciation in the value of property of the estate." *In re Quail Farm, LLC*, No. 09-bk-298, 2010 Bankr. LEXIS 1261, 2010 WL 1849867, at *3 (Bankr. N.D. W. Va. May 5, 2010) (citing *In re Tolco Properties, Inc.*, 6 B.R. 482, 486 (Bankr. E.D. Va. 1980)). Furthermore, there is a continuing loss to or diminution of the estate where, as it appears the case here, real estate taxes are not paid by the debtor,[2] and the debtor has no ability to make the required payments. *See*, *In re Hamann*, No. 25-71986-LAS, 2025 Bankr. LEXIS 1789, at *11 (Bankr. E.D.N.Y. July 28, 2025) (finding cause to dismiss or convert under Section 1112(b)(4)(A) where there was no evidence of payment of real estate taxes and homeowners' insurance by the debtor, coupled with insufficient income to make such payments).

51.     The second prong requires a showing that there is no reasonable likelihood of rehabilitation. *In re Adamo*, No. 14-73640-las, 2016 Bankr. LEXIS 694, at *32 (Bankr. E.D.N.Y. Mar. 4, 2016). "Rehabilitation" for purposes of subsection 1112(b)(4)(A) "does not mean the same thing as reorganization for purposes of Chapter 11 because a reorganization may include an orderly or complete liquidation." *AdBrite Corp.*, 290 B.R. at 216. Rather, "[i]n this context, rehabilitation means to put back in good condition and reestablish on a sound basis." *Id.* The debtor must be "reestablished on a secured financial basis, which implies establishing a cash flow from which its current obligations can be met." *Id.*; *Taub v. Adams*, 10-CV-02600 (CBA), 10-CV-02611(CBA), 2010 U.S. Dist. LEXIS 104805, at *37 (E.D.N.Y. Aug. 30, 2010).

---

[2] Upon information and belief, the real estate taxes are included as part of the Co-Op maintenance charges, which the Debtor is delinquent on and appears to not have been paying them on a post-petition basis.

52. Here, there has been a continuing loss to or diminution of the estate as a result of the Debtor's failure to pay the post-petition maintenance charges, which, upon information and belief, include the real estate taxes with respect to the Co-Op. The combined monthly maintenance charges alone are $7,260.26.[3] Upon information and belief, since the Petition Date, the Debtor has not paid any amount toward the maintenance charges, which continue to accrue each month and burden the estate's interest in the Co-Op. As of June 1, 2026, the post-petition maintenance arrears alone are approximately $72,602.60, calculated at $7,260.26 per month for the ten months during which the Debtor has been in bankruptcy.

53. Additionally, there is also no reasonable likelihood of rehabilitation. It appears that the Debtor has not demonstrated any ability to cure the growing maintenance arrears or generate the funds necessary to pay the ongoing Co-Op maintenance charges. Indeed, in the Debtor's 1007 Declaration, the Debtor appears to admit that he has "**little to no available funds**" for, among other things, the "**coop maintenance and carrying costs…**" *See* 1007 Decl. ¶ 4 (emphasis added). The Debtor's own admission (and the May 2026 MOR) appears to confirm that he lacks the cash flow necessary to meet his current (and post-petition) obligations and cannot reestablish himself on a sound financial basis. Accordingly, cause exists to dismiss or convert the Debtor's Chapter 11 case.

### III. The Debtor's Failure to File Accurate Monthly Operating Reports

54. Cause to dismiss or convert the Debtor's Chapter 11 case also exists under Section 1112(b) of the Bankruptcy Code because the Debtor has repeatedly failed to file accurate MORs.

---

[3] *See* **Exhibit "D"**. The maintenance charge for Unit 1K is $3,694.39, and the maintenance charge for Unit 2K is $3,565.87 for a total combined monthly amount of $7,260.26. This amount does not even include the operating assessments or "Cap" assessments. The Debtor's MOR for the May 2026 reporting period shows total receipts for that period of $7,224, which is less than the amount needed to pay the monthly maintenance charges of $7,260.26 (exclusive of any other living expenses that the Debtor has).

55.     Accurate and complete MORs are essential to the administration of a Chapter 11 case because the Court, the United States Trustee, and creditors rely upon them to evaluate a debtor's financial condition and the Debtor's compliance with their obligations. *See In re DRTMG*, 667 B.R. 862, 872 (Bankr. S.D. Ohio 2025) (The court found that a debtor's monthly operating reports are the "lifeblood" of the Debtor's Chapter 11 process and serve as the primary means for monitoring the debtor's compliance with the Bankruptcy Code's requirements).

56.     Courts have held that dismissal or conversion is warranted where a debtor files monthly operating reports that are misleading or unreliable. *See, e.g., Ronald Kern & Sons v. United States Tr. (In re Ronald Kern & Sons)*, 2002 U.S. Dist. LEXIS 13884, at *5 n.3 (W.D.N.Y. June 11, 2002); *see also In re Tosh*, No. 12-03300-8-JRL, 2012 Bankr. LEXIS 5190, at *7-8 (Bankr. E.D.N.C. Nov. 6, 2012) (finding cause under Section 1112(b)(4)(B) where the debtor's fiscal irresponsibility was coupled with misleading monthly operating reports).

57.     Here, the Debtor's MORs repeatedly and materially misrepresented his compliance with his domestic support obligations. In each MOR filed while the Debtor was delinquent on his post-petition domestic support obligations, the Debtor checked the box indicating that he was current on those obligations. That representation was false. During the approximately ten-month pendency of this case, the Debtor remitted only two domestic support payments to Ms. Wolfson and failed to remain current on his ongoing post-petition obligations throughout his Chapter 11 case. By affirmatively representing that he was current (when he was not), the Debtor submitted misleading reports to the Court, the United States Trustee, and creditors. The Debtor's repeated filing of materially inaccurate MORs constitutes cause for dismissal or conversion under Section 1112(b) (and likely 1112(b)(4)(B)). Accordingly, the Court should dismiss or convert the Debtor's Chapter 11 case.

**IV.** **There Are No Unusual Circumstances**

58. Under Section 1112(b)(2), the Court may deny a motion to convert or dismiss if: (i) the Court finds and specifically identifies "unusual circumstances establishing that conversion or dismissal is not in the best interests of creditors and the estate"; **and** (ii) the debtor or any other party in interest demonstrates that the requirements of Sections 1112(b)(2)(A) and (B) have been met. *See* 11 U.S.C. § 1112(b)(2) (emphasis added); *see also In re UFP Holding I, LLC*, 675 B.R. 302, 311 n.11 (Bankr. S.D.N.Y. 2025) (This Court found that for the caveat under Section 1112(b)(2) to apply, a debtor must establish (1) that there is a likelihood a plan will be confirmed; or (2) present a reasonable justification for the act or omission that established cause and cure the act or omission within a reasonable period of time fixed by the Court).

59. The Bankruptcy Code does not define "unusual circumstances"; however, courts have held that "unusual circumstances" are those that contemplate conditions that are not common in most Chapter 11 cases. *In re Van Eck*, 425 B.R. 54, 63 (Bankr. D. Conn. 2010). "Such conditions must not only be unusual, they must also demonstrate that dismissal or conversion is not in the best interest of creditors and the estate." *Id.*

60. The burden of establishing an unusual exception is placed on the debtor. *In re Rubio*, No. 09-75163-ast, 2011 Bankr. LEXIS 148, at *9 (Bankr. E.D.N.Y. Jan. 13, 2011). And the exception for "unusual circumstances" under Section 1112(b)(2) is unavailable where the motion to dismiss or convert is predicated on cause arising under Section 1112(b)(4)(A), namely, the continuing loss to or diminution of estate assets and the absence of a reasonable likelihood of rehabilitation. *Id*.

61. Here, the "unusual circumstances" exception should not apply because Ms. Wolfson seeks dismissal or conversion, among other grounds, pursuant to Section 1112(b)(4)(A)

based upon the continuing loss to or diminution of estate assets and the absence of a reasonable likelihood of rehabilitation.

62.     However, assuming *arguendo* that the "unusual circumstances" exception does apply, the Debtor would be unable to satisfy his burden. As the Debtor states in his 1007 Declaration, this case appears to have been precipitated by the Matrimonial Proceeding between Ms. Wolfson and the Debtor (*See* 1007 Decl. ¶ 4), which involves the Debtor's and Ms. Wolfson's respective property rights, a situation common in consumer bankruptcy cases.

63.     Additionally, there is no reasonable likelihood that the Debtor will confirm a Chapter 11 plan within a reasonable period of time, as the Debtor has not filed a Chapter 11 plan in this case and his exclusive time to do so has long since expired. *See* 11 U.S.C. § 1121(b). Additionally, the Debtor likely cannot file a Chapter 11 plan until and unless the Matrimonial Court determines the Debtor's interest in the Co-Op, which could take months or even years.

64.     Furthermore, the Debtor cannot establish a reasonable justification for his conduct. The "causes" asserted herein are not the result of an isolated mistake, temporary disruption, or unforeseen circumstance. Rather, they arise from what appears to be a sustained pattern of noncompliance with court-ordered obligations. The Debtor has repeatedly failed to pay post-petition domestic support obligations, failed to pay post-petition mortgage obligations, failed to pay post-petition Co-Op maintenance charges, and has filed misleading monthly operating reports that inaccurately represent that he was current on his domestic support obligations when he was not. The majority of these failures persisted both before and throughout the pendency of this Chapter 11 case. The Debtor's repeated failure to comply with court-ordered obligations should not constitute a reasonable justification within the meaning of Section 1112(b)(2)(B)(i).

65.     Moreover, the Debtor cannot demonstrate that the acts or omissions giving rise to "cause" will be cured within a reasonable period of time. The post-petition domestic support arrears continue to accrue each month. Likewise, the unpaid post-petition Co-Op maintenance charges continue to increase monthly, and the Debtor has not proposed any plan to cure those post-petition arrears. To the contrary, the Debtor appears to admit in his 1007 Declaration, under penalty of perjury, that he lacks the funds necessary to satisfy the numerous court-ordered obligations, including mortgage payments, maintenance charges, and other obligations arising from the Matrimonial Proceeding. *See* 1007 Decl. ¶ 4. Such an admission undermines any contention by the Debtor that the existing post-petition defaults can be cured within a reasonable period of time. In addition, the May 2026 MOR appears to evidence that the Debtor does not have the monthly cash flow to even pay the monthly Co-Op maintenance charges.

66.     Accordingly, even if the "unusual circumstances" exception is available, the Debtor cannot satisfy the requirements of Section 1112(b)(2), and dismissal or conversion of this Chapter 11 case remains warranted.

## V.     Ms. Wolfson's Preference is Dismissal, Not Conversion

67.     In determining whether dismissal or conversion is in the best interest of creditors, courts consider multiple factors. *In re BH S&B Holdings, LLC*, 439 B.R. 342, 346 (Bankr. S.D.N.Y. 2010). Those factors are:

1. Whether some creditors received preferential payments, and whether equality of distribution would be better served by conversion rather than dismissal.

2. Whether there would be a loss of rights granted in the case if it were dismissed rather than converted.

3. Whether the debtor would simply file a further case upon dismissal.

4. The ability of the trustee in a chapter 7 case to reach assets for the benefit of creditors.

5. In assessing the interest of the estate, whether conversion or dismissal of the estate would maximize the estate's value as an economic enterprise.

6. Whether any remaining issues would be better resolved outside the bankruptcy forum.

7. Whether the estate consists of a "single asset."

8. Whether the debtor had engaged in misconduct and whether creditors are in need of a chapter 7 case to protect their interests.

9. Whether a plan has been confirmed and whether any property remains in the estate to be administered.

10. Whether the appointment of a trustee is desirable to supervise the estate and address possible environmental and safety concerns.

*Id.* at 346-7.

Here, factors 2, 6, 7, 8, and 9 are applicable and support dismissal over conversion.

### *Factor Two: Whether there would be a loss of rights granted in the case if it were dismissed rather than converted*

68. Dismissal would preserve and restore the rights and remedies available to Ms. Wolfson that, unfortunately, are not meaningfully advanced through conversion to Chapter 7. *See* Wolfson Decl. ¶ 30. Although this Court granted stay relief to permit the Matrimonial Proceeding to continue, the continued existence of the bankruptcy case creates uncertainty concerning the scope of permissible enforcement efforts and the extent to which the Matrimonial Court may impose coercive remedies against the Debtor. As the record in both the Matrimonial Proceeding and in this Court shows, the Debtor is not remitting spousal support or child support payments to Ms. Wolfson, placing her in a precarious financial position. However, upon dismissal, the Matrimonial Court would be free to exercise its full contempt powers and enforce its prior orders

without concern that escalating sanctions (including possibly incarceration)[4] might implicate the Bankruptcy Code or interfere with the administration of a bankruptcy estate. Such remedies may include monetary sanctions, coercive contempt remedies, and other relief available under applicable state law designed to compel compliance with court-ordered support obligations.

### Factor Six: Whether any remaining issues would be better resolved outside the bankruptcy forum

69. Here, any remaining issues between the Debtor and Ms. Wolfson would likely be better resolved outside the bankruptcy forum. As the Debtor appears to admit in his 1007 Declaration, this Chapter 11 case was precipitated by the Matrimonial Action (*See* 1007 Decl. ¶ 4), which includes the determination and enforcement of domestic support obligations, equitable distribution rights, responsibility for the Co-Op, and related matrimonial issues. This Court has already recognized the predominance of those state-law issues in its Memorandum Opinion by granting relief from the automatic stay to permit the Matrimonial Proceeding to continue. And because the principal disputes are already being adjudicated in the Matrimonial Court, dismissal would permit those issues to be resolved in the forum most familiar with the parties, their financial circumstances, and the extensive history of the matrimonial litigation.

### Factor Seven: Whether the estate consists of a "single asset"

70. This case effectively concerns a single significant asset—the Co-Op—and there appears to be little reason to believe that conversion would materially benefit unsecured creditors. As set forth in the Broker Retention Application, it appears that the Debtor's exit strategy is the eventual sale of the Co-Op and division of proceeds with Ms. Wolfson. *See* Brok. Ret. Appl. ¶ 5. The parties' respective interests in that asset remain intertwined with the unresolved issues in the

---

[4] *See* Wolfson Decl. ¶ 30. Unfortunately, and if this case were to be dismissed, the escalating sanction of incarceration may be the only way to compel the Debtor to pay Ms. Wolfson spousal and child support.

Matrimonial Proceeding. A Chapter 7 trustee would necessarily incur additional administrative expenses while awaiting a determination from the Matrimonial Court concerning the parties' ownership interests in the Co-Op (which could take months, if not years), distribution rights, and related matrimonial claims. Those additional administrative expenses would likely further diminish the value available for creditors without likely providing a corresponding benefit to the estate.

### Factor Eight: Whether the debtor had engaged in misconduct and whether creditors are in need of a chapter 7 case to protect their interests

71. As set forth above, the Debtor has failed to comply with court-ordered domestic support obligations, failed to pay ongoing post-petition Co-Op maintenance charges, failed to satisfy post-petition mortgage obligations, and has repeatedly filed monthly operating reports falsely representing that he was current on his post-petition domestic support obligations when in fact he was not. Under these circumstances, creditors—and particularly Ms. Wolfson as the holder of domestic support claims (and likely one of the largest unsecured creditors)—are better served by allowing the Matrimonial Court to exercise its full authority to compel the Debtor's compliance rather than placing the parties into a Chapter 7 liquidation that is unlikely to remedy the Debtor's ongoing noncompliance.

### Factor Nine: Whether a plan has been confirmed and whether any property remains in The estate to be administered.

72. Factor nine supports dismissal. Here, no plan (or disclosure statement) has been filed, let alone confirmed. The Debtor's exclusivity period has expired, and there is no indication that a confirmable plan will be filed within a reasonable period of time. Moreover, the Debtor's exit strategy appears to depend upon the disposition of the Co-Op and the resolution of issues presently pending before the Matrimonial Court. Under these circumstances, the continued

administration of this Chapter 11 case serves little bankruptcy purpose, and dismissal is preferable to conversion.

73.     Accordingly, Ms. Wolfson submits that dismissal, rather than conversion, is in the best interest of creditors and the estate. *See* Wolfson Decl. ¶¶ 29, 30.

**CONCLUSION**

**WHEREFORE**, Ms. Wolfson respectfully requests that the Court enter an order: (i) dismissing the Debtor's Chapter 11 case, or alternatively converting the case to a case under Chapter 7 of the Bankruptcy Code; together with (ii) such other, further, and different relief that this Court deems just and proper.

Dated: June 22, 2026
  Huntington, New York

Respectfully submitted,

**Rosen, Tsionis & Pizzo, PLLC**
*Counsel to Nancy Wolfson-Moche*

*/s/ Alex E. Tsionis*
Alex E. Tsionis, Esq.
38 New Street
Huntington, New York 11743
Tel: (631) 423-8527
atsionis@ajrlawny.com