**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | FOR PUBLICATION |
| SELIM DAVID MOCHE, | Chapter 11 |
| Debtor. | Case No. 25-11831 (JPM) |

***APPEARANCES***

**PICK & ZABICKI LLP**
*Counsel for the Debtor*
369 Lexington Avenue, 12th Floor
New York, NY 10017
By: Douglas J. Pick, Eric Zabicki

**ROSEN, TSIONIS & PIZZO, PLLC**
*Counsel for Nancy Wolfson-Moche*
38 New Street
Huntington, NY 11743
By: Alex E. Tsionis

**TARTER KRINSKY & DROGIN LLP**
*Counsel for Gracie Gardens Owners Corp.*
1350 Broadway, 11th Floor
New York, NY 10018
By: David H. Wander, Jack M. Manchester

**UNITED STATES TRUSTEE**
*Office of the U.S. Trustee, Region 2*
Alexander Hamilton Custom House
One Bowling Green, Room 534
New York, NY 10004
By: Andrea Beth Schwartz

**MEMORANDUM OPINION AND ORDER**
**<u>DISMISSING CHAPTER 11 CASE</u>**

**JOHN P. MASTANDO III**
**UNITED STATES BANKRUPTCY JUDGE**

## I.    INTRODUCTION

This matter arises from the Chapter 11 case of debtor Selim David Moche (the "**Debtor**"). Before the Court is the motion (the "**Motion**"), dated June 22, 2026, of creditor Nancy Wolfson-Moche ("**Wolfson**"), for entry of an order pursuant to 11 U.S.C. § 1112(b) to dismiss this Chapter 11 case or convert it to a case under Chapter 7. (Dkt. No. 86). For the reasons set forth below, the Court finds that "cause" exists to dismiss or convert the case, and that dismissal is in the best interests of creditors and the estate. Therefore, the Motion is **GRANTED** to the extent it seeks dismissal.

## II.    BACKGROUND

On July 16, 2026, creditor Gracie Gardens Owners Corp. (the "**Co-Op Board**") filed a joinder and limited opposition to the Motion (the "**Limited Opposition**"). (Dkt. No. 95). The Co-Op Board agrees that "cause" exists under § 1112(b) to dismiss or convert the case but argues that conversion, rather than dismissal, is in the best interests of creditors and the estate. (*Id*. ¶¶ 1-4). According to the Co-Op Board, dismissal would result in a "race to the courthouse" in which individualized collection efforts by creditors would diminish the recoveries available to all creditors. (*Id*. ¶¶ 2, 61). The Co-Op Board contends that "conversion, not dismissal, is the only pathway to maximizing the value of the estate, given the Debtor's inability to effectively manage estate assets[.]" (*Id*. ¶ 51). According to the Co-Op Board, because the residential property contains "approximately $1,941,845.76 of remaining equity," conversion would permit a Chapter 7 trustee to liquidate the Debtor's assets and ensure an orderly and equitable distribution to creditors. (*Id*. ¶ 54).

On July 20, 2026, Wolfson filed a reply to the Limited Opposition (the "**Reply**"), arguing that dismissal, rather than conversion, is the appropriate remedy. (Dkt. No. 99). Wolfson relies on this Court's Memorandum Opinion and Order, dated March 9, 2026 (the "**Memorandum Opinion**"), which denied the Debtor's prior application to retain a real estate broker to sell the residential property at issue in the parties' matrimonial dispute and granted Wolfson relief from the automatic stay. (Dkt. No. 61). The Memorandum Opinion explained that, "before any sale may proceed," the Court or the state matrimonial court "must determine whether the Debtor holds any cognizable interest in the [p]roperty such that [the interest] constitutes property of the estate." (*Id.*).

Wolfson argues that, if the case were converted to Chapter 7, a Chapter 7 trustee would confront the same threshold issue. (Dkt. No. 99, ¶ 5). Until the Debtor's interest in the property is determined in the matrimonial proceeding – for which this Court granted relief from the automatic stay – a trustee could not begin to market, sell, or otherwise liquidate that interest for the benefit of creditors. (*Id.* ¶¶ 5-6). Instead, the trustee would be required to await the state matrimonial court's resolution of the parties' respective marital rights, while the bankruptcy estate would continue to incur administrative expenses. (*Id.*). Wolfson contends that conversion would therefore provide no present benefit to creditors and could substantially increase the costs of bankruptcy administration. (*Id.*).

The Court held a hearing on the Motion on July 24, 2026 (the "**Hearing**"). At the Hearing, the Debtor and Wolfson agreed that "cause" exists to dismiss or convert this Chapter 11 case under § 1112(b), but they disagreed as to the appropriate disposition. (*See* July 24, 2026 Hr'g Tr.). The Co-Op Board did not appear at the Hearing. On August 3, 2026, the Debtor filed a letter consenting to conversion of the case to Chapter 7. (Dkt. No. 105).

### III.  <u>LEGAL STANDARD</u>

Section 1112(b)(1) of the Bankruptcy Code provides that, upon request of a party in interest and after notice and a hearing, a court "shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause."  11 U.S.C. § 1112(b)(1).  Section 1112(b)(4) identifies a non-exhaustive list of circumstances that constitute cause, including a "substantial or continuing loss to or diminution of the estate" and an "absence of a reasonable likelihood of rehabilitation."  *In re JJ Arch LLC*, 663 B.R. 258, 275 (Bankr. S.D.N.Y. 2024) (citing 11 U.S.C. § 1112(b)(4)(A)).

Once cause is established, "a court must examine whether dismissal or conversion" better serves the "interests of the creditors and the estate."  *In re Elmwood Ventures LLC*, No. 25-10932-MG, 2025 WL 2629542, at *2 (Bankr. S.D.N.Y. Sept. 10, 2025) (citing 7 COLLIER ON BANKRUPTCY ¶ 1112.04 (16th ed. 2009)).  In making that determination, courts consider, among other factors:

(1)  Whether some creditors received preferential payments, and whether equality of distribution would be better served by conversion rather than dismissal.
(2)  Whether there would be a loss of rights granted in the case if it were dismissed rather than converted.
(3)  Whether the debtor would simply file a further case upon dismissal.
(4)  The ability of the trustee in a chapter 7 case to reach assets for the benefit of creditors.
(5)  In assessing the interest of the estate, whether conversion or dismissal of the estate would maximize the estate's value as an economic enterprise.
(6)  Whether any remaining issues would be better resolved outside the bankruptcy forum.
(7)  Whether the estate consists of a "single asset."
(8)  Whether the debtor had engaged in misconduct and whether creditors are in need of a chapter 7 case to protect their interests.
(9)  Whether a plan has been confirmed and whether any property remains in the estate to be administered.
(10)  Whether the appointment of a trustee is desirable to supervise the estate and address potential environmental and safety concerns.

*In re BH S & B Holdings, LLC*, 439 B.R. 342, 346 (Bankr. S.D.N.Y. 2010) (citing 7 COLLIER ON BANKRUPTCY ¶ 1112.04 (16th ed. 2009)).  No single factor is dispositive, and courts must conduct

a holistic assessment based on what best serves "the collective welfare of all creditors, rather than the interests of a particular creditor or selected group." *In re SPAC Recovery Co.*, 676 B.R. 708, 725 (Bankr. S.D.N.Y. 2026); *see also In re DB Capital Holdings, LLC*, No. 10-25805, 2011 WL 5520439, at *3 (Bankr. D. Colo. Nov. 14, 2011) ("The best interests of the creditors test addresses the interests of the creditor body as a whole.").

## IV.  **DISCUSSION**

There is no dispute that cause exists under § 1112(b).  The Co-Op Board, Wolfson, and the Debtor have each agreed that this case should not remain in Chapter 11.  (Dkt. Nos. 95, 99, 105). Because the parties stipulated that cause exists under § 1112(b), the Court need not determine the specific cause.  The only remaining issue is whether dismissal or conversion is in the best interests of creditors and the estate.  *See In re Kwok*, 640 B.R. 514, 521 (Bankr. D. Conn. 2022) (holding that the court need only decide "whether dismissal [or] conversion … is in the best interest of creditors and the estate" where the parties stipulated that cause exists under § 1112(b)).

Here, the Co-Op Board and the Debtor favor conversion on the grounds that a court-appointed Chapter 7 trustee would centralize the administration of the estate and prevent creditors from pursuing competing collection efforts in state court.  (Dkt. Nos. 95, 105).  Wolfson argues that dismissal is preferable because a Chapter 7 trustee would be unable to liquidate the estate's principal asset – the Debtor's unresolved interest in the residential property – until the state matrimonial court determines the parties' respective marital rights.  (Dkt. No. 99).

On balance, the Court finds that the relevant *BH S & B Holdings* factors weigh in favor of dismissal.  First, the ability of a Chapter 7 trustee to reach and administer assets favors dismissal. Although the Co-Op Board asserts that the residential property contains substantial equity available for distribution, the record does not establish what portion, if any, of that equity

5

constitutes property of the estate.    (*See* Memorandum Opinion, Dkt. No. 61).    The Debtor's asserted interest in the residential property remains undefined pending resolution of the state matrimonial proceeding.  (*Id.*).  A Chapter 7 trustee would therefore confront the same threshold issue as the Debtor and could not presently market or liquidate the asserted interest in an efficient and orderly fashion.

Second, the effect of each remedy on estate value and administrative expenses favors dismissal.  Conversion would require the appointment of a Chapter 7 trustee, whose compensation would reduce the funds potentially available to creditors while the trustee awaited resolution of the state matrimonial proceeding.  *See In re E. Gluck Corp.*, No. 25-12683-MG, 2026 WL 1431165, at *4 (Bankr. S.D.N.Y. May 20, 2026) (noting that "a Chapter 7 trustee would be entitled to statutory fees relating to distributions of the already monetized assets made to creditors").  To the extent the trustee needed to participate in that proceeding, the trustee might also be required to retain legal counsel, thereby further diminishing the common pool of assets available for distribution.  *See In re Cosmopolitan Aviation Corp.*, 763 F.2d 507, 511 (2d Cir. 1985) ("Conversion, which would have required the appointment of a new trustee, would have produced further delays and would have placed an additional drain on the estate's remaining assets."); *see also In re Ideal Mortg. Bankers, Ltd.*, 539 B.R. 409, 443 (Bankr. E.D.N.Y. 2015) ("Under the Bankruptcy Code, compensation and reimbursement to a trustee and his professionals are administrative expenses and are paid before distribution to holders of allowed general unsecured creditors.").  Because conversion would not create an immediate source of recovery or facilitate a prompt distribution, those additional expenses would diminish, rather than enhance, the value potentially available to creditors.

Third, the remaining issues are better resolved outside the bankruptcy forum. As the Court previously explained in the Memorandum Opinion, the central dispute concerns the parties' respective rights in the residential property arising from their matrimonial proceeding. (*See* Memorandum Opinion, Dkt. No. 61). The state matrimonial court is already addressing those issues and is better positioned to determine the Debtor's ownership interest under New York law. *See In re Greenwald*, 134 B.R. 729, 731 (Bankr. S.D.N.Y. 1991) (noting that New York state courts routinely adjudicate equitable distribution, support, and marital property rights and possess specialized expertise in family law matters); *see also In re Levine*, 84 B.R. 22, 24 (Bankr. S.D.N.Y. 1988) (noting that the bankruptcy court "should not interfere with the state court's determination as to the New York law of equitable distribution as applied to the claims of the debtor and his wife"). Continued bankruptcy administration would duplicate proceedings without advancing the resolution of that dispute.

Fourth, the absence of unadministered claims or misconduct requiring investigation favors dismissal. The record identifies no potential avoidance claims, fraudulent conveyances, concealed assets, misconduct, or other matters requiring investigation by an independent Chapter 7 trustee. *See In re Eljamal*, No. 17-CV-7870-KMK, 2018 WL 4735719, at *11 (S.D.N.Y. Sept. 28, 2018) (citing *In re Microwave Prod. of Am., Inc.*, 102 B.R. 666, 676 (Bankr. W.D. Tenn. 1989)) (finding grounds to appoint a trustee where "the debtor is not in a strong posture to pursue possible claims that may have resulted from conflicts of interests and fraudulent transfers, [and] a trustee would likely be able to investigate claims that could result in additional sums of money coming into the estate"). The Co-Op Board has not identified any additional asset or cause of action that a trustee could pursue for the benefit of creditors. Nor does the record suggest that conversion is necessary to preserve rights acquired during the Chapter 11 case.

The principal factor favoring conversion is the possibility that dismissal could lead to competing collection efforts and impair equality of distribution. (Dkt. No. 95). Although the possibility of a race among creditors to the courthouse and the interest in equality of distribution weigh in favor of conversion, those considerations are insufficient to overcome the absence of any presently administrable estate asset and the additional costs that conversion would impose. (*Id*.). Centralized administration provides little practical benefit when a Chapter 7 trustee cannot collect, liquidate, or distribute the estate's principal potential asset. *See In re Bumpass*, 28 B.R. 597, 599 (Bankr. S.D.N.Y. 1983) ("A trustee's goal in a Chapter 7 case is to collect the assets of the estate for liquidation and distribution to the creditors."); *see also In re Blanchard*, 516 B.R. 11, 17 (Bankr. N.D.N.Y. 2014) ("The collection and distribution of non-exempt assets by a liquidating trustee is the *sine qua non* of a Chapter 7 bankruptcy."); *see also In re Acme Cake Co., Inc.*, 495 B.R. 212, 217 (Bankr. E.D.N.Y. 2010) (finding that "dismissal, as opposed to conversion, was in the best interest of creditors and the estate" when "upon conversion and liquidation … the only parties that stood to receive distributions were the chapter 7 trustee, his professionals, if any, and the holders of administrative claims in the chapter 11 case").

Because conversion would impose additional administrative expenses without enabling the prompt liquidation of an identified estate asset, while dismissal would permit the controlling property dispute to proceed in the appropriate state court forum, the Court concludes that dismissal, rather than conversion, is in the best interests of creditors and the estate.

## V.    **CONCLUSION**

For the foregoing reasons, the Court finds that cause exists under § 1112(b) and that dismissal, rather than conversion, is in the best interests of the creditors and the estate.

8

Accordingly, the Motion (Dkt. No. 86) is **GRANTED** to the extent it seeks dismissal of

this Chapter 11 case.  This Chapter 11 case is hereby **DISMISSED** pursuant to 11 U.S.C. § 1112(b).

    **IT IS SO ORDERED.**

Dated: August 6, 2026
     New York, New York             /s/ John P. Mastando III
                                     HONORABLE JOHN P. MASTANDO III
                                     UNITED STATES BANKRUPTCY JUDGE